**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

SCOTT A. TEEKELL, ET AL                          CIVIL ACTION NO. 12-0044

VERSUS                                           JUDGE S. MAURICE HICKS, JR.

CHESAPEAKE OPERATING, INC., ET AL                MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is plaintiffs Scott and Rachal Teekell's ("the Teekells") Motion to

Remand (Record Document 14) and defendants Chesapeake Louisiana L.P. ("Chesapeake

Louisiana") and JPD Energy, Inc.'s ("JPD Energy") Motion to Dismiss for Failure to State

a Claim (Record Document 20). For the reasons that follow, the Teekells' Motion to

Remand is **DENIED** and defendants' Motion to Dismiss is **GRANTED**.

## BACKGROUND

The matter before the Court arose out of the drilling operations conducted by

Chesapeake Operating, Inc. ("Chesapeake Operating") in Sections 27 and 34 of Township

17N, Range 15W of Caddo Parish, Louisiana. (Record Document 20-1 at 2). The Teekells

are owners of immovable property located in one of these sections. See id. The two wells

at issue are on adjacent property owned by defendant Crow Horizons Company ("Crow").

See id. The Teekells' claim that the water they obtain through water wells on their property

has been adversely affected by the aforementioned drilling operations. See id. Specifically,

the Teekells' claim that "Defendants have discharged and/or released salt water, natural

gas, hydrogen sulfide gas, and/or other pollutants into the ground, air, surface water,

ground water, and aquifers." See id. "The two wells at issue are designated as unit wells

for gas drilling units that have been created in each section by order of the Commissioner of Conservation." (Record Document 19 at 6).

The defendants in this matter are Chesapeake Operating, Crow, JPD Energy, and Chesapeake Louisiana. Chesapeake Operating is the operator of the drilling operation, Crow owns the land on which the wells were drilled, JPD Energy and Chesapeake Louisiana are "lessees and assignees of oil and gas mineral leases affecting" the property Crow owns. (Record Document 19 at 7). This matter began in the First Judicial District Court for the Parish of Caddo but was removed by Chesapeake Operating based on diversity jurisdiction. See id. Chesapeake Operating bases diversity on the fact that the two Louisiana defendants, JPD and Crow, are improperly joined only for the purpose of destroying complete diversity.

## LAW AND ANALYSIS

"The party seeking to invoke federal jurisdiction bears the burden of establishing ... that the parties are diverse." Garcia v. Koch Oil Co. of Tex. Inc., 351 F.3d 636, 639 (5th Cir. 2003) "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.' " Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir.2008).

In order to deny a motion to remand due to improper joinder of a nondiverse defendant, the Court must analyze whether "(1) there is actual fraud in pleading jurisdictional facts or (2) the plaintiff is unable to establish a cause of action against the nondiverse defendant." Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007). "The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity. We have previously stated, but it bears emphasizing again, that the 'burden of

demonstrating [improper] joinder is a heavy one.' " <u>McDonal v. Abbott Laboratories</u>, 408 F.3d 177, 183 (5th Cir. 2005). "Removal has been permitted in some such cases, but the overwhelming majority of those cases have been remanded 'because even if the parties have been misjoined the misjoinder was not so egregious as to be improper or fraudulent.' That is because the finding of improper joinder is 'reserved for a very small handful of the most extreme cases.' " <u>Akshar 6, LLC v. Travelers Cas. & Sur. Co. of Am.</u>, 2010 WL 2464799 (W.D. La. June 10, 2010) <u>aff'd sub nom.</u> <u>Akshar 6, L.L.C. v. Travelers Cas. & Sur. Co. of Am.</u>, 2010 WL 3025018 (W.D. La. July 29, 2010) (Citing <u>Texas Instruments Inc. v. Citigroup Global Markets, Inc.</u>, 266 F.R.D. 143, 152 (N.D. Tex. 2010)). The Court "must construe all disputed questions of fact and ambiguities of law in [the non-removing party's] favor." <u>Ross v. Citifinancial, Inc.</u>, 344 F.3d 458, 463 (5th Cir. 2003).

There has been no allegation of actual fraud in the Teekells' pleading of jurisdictional facts. Rather, defendants rest their argument to dismiss the nondiverse parties on the second prong of this analysis.

Chesapeake Operating contends that "unit operations are not conducted pursuant to any mineral lease(s) and/or consent of the landowner upon whose property the unit well is ultimately drilled by the commissioner-designated unit operator." (Record Document 19 at 19). Further, "unitization operates as an infringement upon the landowner's exclusive right to drill and produce minerals from his property for his sole benefit." <u>See id</u>. Chesapeake argues that there is no "tort liability for unit operations on the landowner and/or his mineral lessees, and the imposition of such liability would contravene the well-established rules governing the effect of unitization." <u>See id</u>.

The Teekells contend they have a cause of action against the Louisiana defendants

under Louisiana Civil Code articles 2315 (Tort) and 667-669 (Obligations of Neighborhood). Further they contend they have a cause of action against them under Title 31, the Louisiana Mineral Code. (Record Document 14-1 at 2). "Articles 667 and 668 of the Louisiana Civil Code state that a landowner may not make any work on his property which may deprive his neighbor of the liberty of enjoying his own property, or which may cause damage to his neighbor." (Record Document 14-1 at 6). Further, the Teekells argue that this liability attaches to any person acting on the landowner's behalf. See id. "Simply put, the landowner here is potentially liable for acts on his properties undertaken by his lessees or their agents where such activities improperly impinge on the neighboring land owners." (Record Document 14-1 at 6-7).

All of the drilling operations at issue are part of a unit well. The units were all created by the Commissioner of Conservation and drilling was commenced by a permit obtained through the Commissioner. It is an "established rule that the drilling and production of oil from a unitized area constitutes an exercise and use of the mineral rights throughout the entire unit and operates as a substitute for performance of drilling obligations contained in a mineral lease covering any property or tract located within the unit." Nunez v. Wainoco Oil & Gas Co., 488 So.2d 955, 964 (La. 2010). It is clear from Nunez that unitization laws were created to prevent the "haste, inefficient operations, and immeasurable waste within the ground and above" that was found under the prior "rule of capture" regime. See id. at 960.

The Commissioner of Conservation has "jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this Chapter and all other laws relating to the conservation of oil and gas."La. R.S. 30:4. "He has specific investigative

powers to determine whether or not 'waste' exists or is imminent and the general authority

to establish whatever rules, regulations, and orders are necessary to prevent it and to

enforce the conservation laws. In recognition of the physical factors involved in the

production of hydrocarbons, *the Commissioner is also given the specific power to establish*

*a drilling unit or units for each pool.*" Nunez v. Wainoco Oil & Gas Co., 488 So. 2d 955, 961

(La. 1986) (their emphasis)(citations omitted).

In discussing whether or not the Commissioner's powers intrude on a landowner's

rights regarding ownership of a thing, the Louisiana Supreme Court stated:

> We note, however, that each of these provisions has been
> modified in recent years to reflect a qualification of sorts in
> one's rights in private property. Whereas the predecessor to
> La.Civ.Code Ann. art. 477 granted to the owner use of property
> "in the most unlimited manner, provided it is not used in any
> way prohibited by law or ordinances," currently an owner may
> use, enjoy, and dispose of a thing only "within the limits and
> under the conditions established by law," which contemplates
> a broader range of exceptions to an owner's exclusive
> authority. And, La.Civ.Code Ann. art. 490's assertion that "the
> ownership of a tract of land carries with it the ownership of
> everything that is directly above or under it" was modified in
> 1979 to add the phrase "[u]nless otherwise provided by law."
> Such a change no doubt did occur, at least in part, in
> recognition of the traits of subsurface minerals in liquid and
> gaseous form.

See id. at 962. With this reasoning, the Louisiana Supreme Court found that the laws of

ownership were "inadequate" to "solve the problems of substance under the earth" and that

a landowner's rights to what is under his tract of land is "subject to reasonable statutory

restrictions and the reasonable exercise of the police power."[1] See id.

"Unitization is the device which the Louisiana Department of Conservation employs

---

[1]Further, to the extent that Louisiana Civil Code articles 667 and 668 conflict with
the Mineral Code and the unitization procedure, the mineral code controls. See La. R.S.
31:2.

to protect the correlative rights of surface owners in a common reservoir, and...the device is *clearly available without the consent of a particular landowner.*" See id. at 963 (our emphasis). The Commissioner of Conservation has the power to establish drilling units and "designate a drilling site 'at the optimum position in the drilling unit for the most efficient and economic drainage of such unit.' " See id. "The Commissioner must also issue a permit before the well can be drilled, and the issuance of the permit ... is sufficient authorization to the holder of the permit to enter upon the property covered by the permit and to drill in search of minerals thereon." As to the issue of consent of the landowner, Nunez noted that, "[a]lthough § 30:217 specifically requires the consent of the owner before any person conducts geological surveys for oil, gas, or other minerals, § 30:204 F, authorizing the permit holder to enter the property for drilling purposes, has no such requirement for consent." See id. (citations omitted).

The Louisiana Supreme Court has recognized that, "[i]n fact, the concept of unitization, embodying the principle of ownership in minerals produced from a common source of supply, co-extensive with the individual ownership of the overlying land, is a departure from the traditional notions of private property." See id. at 962.

> Unitization, which creates rights and interests in a pool of hydrocarbons beyond the traditional property lines, *effectively amends La.Civ.Code art. 490 and other private property laws* in the interest of conserving the natural resources of the state and, in effect, of protecting private property interests, or 'correlative rights,' of nondrilling landowners. By prohibiting an individual landowner in the unit from drilling wells on their own tracts, by forcing them to share production, and by limiting the amount of hydrocarbons that can be produced, the exercise of the Commissioner's power to unitize necessarily results in infringement on the usual rights of ownership. Unitization has also resulted in changes in the legal relationships between landowners and lessees within the unit.

> Therefore, *we hold that the more recent legislative enactments of Title 30 and Title 31 supercede in part La.Civ.Code Ann. art. 490's general concept of ownership of the subsurface by the surface owner of land.* Thus, when the Commissioner of Conservation has declared that landowners share a common interest in a reservoir of natural resources beneath their adjacent tracts, such common interest does not permit one participant to rely on a concept of individual ownership to thwart the common right to the resource as well as the important state interest in developing its resources fully and efficiently.

See id. at 964 (our emphasis).

All of the above quoted portions of the Nunez opinion make it clear that unitization takes place pursuant to a permit of the Commissioner of Conservation and not the consent of the landowner. A landowner cannot prevent the establishment of a unit and, in fact, a unit can be established directly against the wishes of a landowner. A landowner in a unit does not have the right to choose the operator of the unit or the location of the drilling site. Moreover, a landowner is not allowed to keep all of the production from drilling on his property. Rather, he must share the production with the others in his unit.

Therefore, it is clear that the Teekells' claims that Crow is liable as the landowner for making works on his property and that JPD Power and Chesapeake Louisiana are liable as lessee and assignee are not properly founded. A unit operator is not controlled or selected by the landowner or his lessees or assignees. The unit, the unit operator, and the drill site are all chosen by the Commissioner of Conservation and can be chosen without the consent of the landowner or his lessees and assigns.

As the defendants state in their briefing to this Court, "[b]ecause unit drilling operations are entirely distinctive from 'lease' drilling operations....the 'lease' decisions cited by Plaintiffs with respect to liability of a landowner for the 'works' made on his property by

his lessee are distinguishable and wholly inapposite to the present action." Chesapeake Operating is not an agent of Crow, JPD Power, or Chesapeake Louisiana, but rather an operator of a unit established under permit of the Commissioner of Conservation. Crow's consent was not needed for this to occur. The <u>Nunez</u> opinion makes it clear that unitization changes the property rights and obligations of landowners. This is an example of one of those changes. Since the unit at issue can be created without any input whatsoever from Crow, he cannot be held liable for the drilling operations on his land by another entity nor can his lessee and their assigns.

## CONCLUSION

Crow, JPD Power, and Chesapeake Louisiana are not properly joined in this matter as there is there is no cause of action that can be asserted against them based on the facts alleged. Under the improper joinder of a nondiverse defendant principles, these three defendants must be dismissed and the motion to remand must be denied.

Accordingly,

**IT IS ORDERED** that the Teekell's Motion to Remand be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss for Failure to State a Claim be and hereby is **GRANTED**. Crow, JPD Energy, and Chesapeake Louisiana are dismissed from this matter.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 6th day of June, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE